IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANDFORD INTERNATIONAL BANK, LTD., ET AL. | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-cv-03635 |
| DANIEL BOGAR, OSVALDO PI, AND BERNARD YOUNG, | § § § § | |
| Defendants. | § § | |

## DEFENDANT OSVALDO PI'S MOTION TO STRIKE OR LIMIT EXPERT WITNESS TESTIMONY OF JAMES SPINDLER

Defendant Osvaldo Pi ("Pi" or "Defendant") files this Motion to Strike or Limit Expert Witness Testimony of James C. Spindler, and in support respectfully shows the Court as follows:

### I. SUMMARY OF MOTION

On July 22, 2016, Plaintiff designated James C. Spindler ("Spindler") as a testifying expert witness. By this Motion, Defendant moves the Court to strike or limit Spindler's expert testimony.

1. **The Expert.**

Spindler is a law and business professor at the University of Texas law and business schools. He is not currently licensed to practice law in Texas, although he maintains a law license in New York. He practiced law briefly before entering academia. The designation and expert report of Spindler are attached here to as **Exhibit 1**.

2. **The Report.**

Spindler's report states the following six conclusions:

a. SGC provided consulting and investment advisory services to SIBL and other Stanford affiliates, which included managing a private equity portfolio on SIBL's (or the affiliates') behalf. SGC acted as an investment adviser to, and agent of, SIBL and those affiliates.[1]

b. As is well understood in the financial services industry, an investment adviser or one who manages a discretionary account[2] on another's behalf owes duties of care and loyalty to the beneficiary of his services (the "client" or "principal"). In the investment advisory context, these duties include making sure the investments are suitable and appropriate for the client, the obligation to safeguard the client's assets, not making false representations of competence, and the duty to disclose outside compensation or secret profits.

c. Osvaldo Pi ("Pi"), as an employee of SGC, provided consulting and investment adviser services to SIBL and other Stanford affiliates, and played a significant role in managing a private equity portfolio on their behalf. As such, Pi was also an investment adviser to, and agent of, SIBL and those affiliates, and was generally subject to the same duties as was SGC. Pi was also subject to duties imposed by agreements he signed as a condition of his employment.

d. The record reflects that Pi was or should have been aware of several red flags that, at the least, suggested the possibility of significant wrongdoing or misconduct. These include the following:

(1) Pi engaged in and facilitated the use of SIBL funds to purchase private equity interests that were owned not by SIBL, but by Allen Stanford's wholly-owned companies. Pi became aware of this not later than January 14, 2004. Such purchases resulted in a transfer of value from SIBL depositors to Allen Stanford.

(2) Pi provided valuation outlooks of portfolio companies to be used as a basis for valuing certain assets on SIBL's financial statement. Pi was aware of this not later than January 19, 2005. Such use of those projections was improper, as Pi has testified, as they are not reliable or impartial and would pose a danger of inflating the reported value of SIBL's assets. This did, in fact, inflate SIBL's reported valuation.

(3) While Pi states he was ignorant of SIBL's public representations and its investment policies, such ignorance would be incompatible with the obligation to ensure that any private equity investments were suitable for SIBL. Such ignorance would have been a violation of his obligations as an investment adviser to SIBL from shortly after the start of his employment, which began on December 12, 2000.

(4) Notwithstanding his professed ignorance, Pi should have been affirmatively aware that SIBL's policies and public representations were at odds with its private equity

---

[1] Spindler premises his opinion on this point, at least in part, on a Financial Consulting and Advisory Securities Agreement (The "Advisory Agreement") between SGC and SIB. Spindler Report at 1.013. A true and correct copy of the Advisory Agreement between SIB and SGC is attached hereto as **Exhibit 2**.

[2] Spindler apparently doesn't know or understand that SGC was not managing discretionary accounts for SIB or SVCH. *See* **Exhibit 2,** paragraph 1 at 2.001.

---

investments for a variety of reasons: his position as a high-ranking investment officer required it; Pi was encouraged to cross-sell SIBL CDs by his direct superior on multiple occasions; and he investigated SIBL's lending policies in connection with his advisory services. Pi was, or should have been, affirmatively aware of SIBL's lending policies not later than August 13, 2003, the date he reported having investigated SIBL's lending policies.

e. When faced with such red flags, an individual in Pi's position would not have been able to proceed with business-as-usual without undertaking some investigation to determine whether there was, in fact, misconduct. Any reasonable investigation would have revealed that the private equity investments were allowing Allen Stanford and his wholly-owned entities to take assets out of SIBL, that the valuations of the portfolio companies transferred back into SIBL were not reliable, and that SIBL's representations and investment policies did not allow such private equity investments and loans.

f. As is well understood in the financial services industry, it is improper for an investment adviser to obtain secret profits from trades that he recommends without fully disclosing that compensation in advance to his principal. In addition, Pi signed agreements as a condition of his employment that required him to avoid conflicts, disclose conflicts fully, and to receive prior written permission from his supervisor and compliance officer in order to accept any outside compensation. According to his testimony, Pi negotiated and accepted outside deal compensation without fully and appropriately disclosing that compensation and in violation of relevant internal policies and the agreements that he signed. Such compensation created clear conflicts of interest and is contrary to basic principles of agency, the rules governing investment advisers, and the terms of Pi's employment with SGC.

3. **Defendant's Objections to Spindler.**

Defendant objects to Spindler's report and expected testimony on the following grounds:

a. Spindler is generally not qualified as an expert to testify on the existence or performance of any legal duties owed by Pi to any entities, and his unsupported testimony will not assist the jury in deciding any factual issues in this case.

b. Spindler's opinions are improper opinions on issues of law.

## II. ARGUMENT AND AUTHORITIES

A. **Rule 702.**

A lawyer testifying as an expert must meet the requirements of Rule 702 of the Federal Rules of Evidence. Under Rule 702, an expert must possess specialized knowledge that "will

assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597-98, 113 S.Ct. 2786 (1993). Under Rule 104(b) of the Federal Rules of Evidence, the party offering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)9en banc), *cert. denied*, 526 U.S. 1064 (1999).

B. **Spindler is Not Qualified to Testify About Investment Advisor Legal Duties or Industry Standards.**

Spindler opines on the duties owed by an investment advisor,[3] yet Spindler has never been an investment advisor, has never supervised investment advisors, has never worked for a regulator with oversight of investment advisors, evidently has never provided legal representation to any investment advisors, and has never held any investment advisor registrations, licenses or accreditations.[4] Furthermore, Spindler's scant disclosure that his "research, teaching, and consulting include the practices, rules, and standards applicable to investment advisors, brokers, dealers, the securities industry, private equity, and banking" are too vague and generalized to establish that he has any knowledge or expertise as to the *specific* laws, rules, and regulations governing, or the generally accepted customs and practices of, investment advisors. Spindler's report does little more than offer his unsupported *ipse dixit* on investment advisor duties, and the court should rule Spindler is not qualified to testify as a securities industry expert.

---

[3] *See* **Exhibit 1**, Spindler Report at 1.009-1.010.

[4] *See* **Exhibit 1**, Spindler resume.

C.  **Expert Legal Opinions Are Generally Not Permitted.**

Federal courts have consistently held that legal opinions are generally not a proper subject of expert testimony because they do not assist the jury in understanding the evidence, but merely tell the jury what result to reach. *Estate of Sowell v. U.S.,* 198 F.3d 169, 171–72 (5th Cir. 1999) (forbidding expert testimony as to whether a fiduciary was "acting reasonably"); *Askanase v. Fatjo,* 130 F.3d at 673 (holding that the trial court properly excluded expert legal opinions as to whether defendants breached various fiduciary duties); *Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 509–510 (2nd Cir. 1977) (holding that the trial court erred in allowing a legal expert to opine on "the legal standards which he believed to be derived from [a] contract"); *Green v. CBS Broadcasting, Inc.,* 2000 WL 33243748 at *4 (N.D.Tex. December 19, 2000) (recognizing that the "Fifth Circuit has repeatedly held that legal opinions are not a proper subject of expert testimony").

Lawyer experts cannot opine as to what law governs an issue or what the applicable law means because such opinions impermissibly intrude upon the court's duty to instruct the jury on the governing law. *Askanase v. Fatjo,* 130 F.3d 657, 673 (5th Cir. 1997). In *Askanase,* the plaintiffs' legal expert issued a report that defendants had breached various fiduciary duties to a corporation. 30 F.3d at 673. Specifically, the expert's report stated he would give his opinion on "[w]hether LivingWell's officers and directors fulfilled their fiduciary duties to the Company, its creditors, and shareholders. If not, how and to what extent did [they] breach their fiduciary duties." The court stated "such testimony is a legal opinion and inadmissible. Whether the officers and directors breached their fiduciary duties is an issue for the trier of fact to decide. It is not for Knepper to tell the trier of fact what to decide." *Id.* The court held that this testimony was an inadmissible legal opinion because "our legal system reserves to the trial judge the role of

deciding the law for the benefit of the jury." *Id.*[5] The *Askanase* court was concerned with two major problems that would result from offering expert legal opinions. First, citing *Specht*, the court noted that juries are very susceptible to adopting expert opinions, and as a result, juries might conclude that legal experts are more reliable than the judge. *Id.* Second, each party would offer different expert legal opinions, leaving the jury with multiple interpretations of the law. Such differing opinions on the law would only confuse the jury. *Id.*

D.   **Spindler's Opinions and Conclusions Are All Purely Legal Opinions.**

The legal issues of whether Pi owed fiduciary duties to any entities and the nature of those duties are matters for the court to decide. *Fuqua v. Taylor*, 683 SW2d 735, 737 (Tex. App. – Dallas 1984, writ ref'd n.r.e.)(holding that the existence and scope of an alleged fiduciary duty is a question of law for the court). So, for example, Spindler's opinion that "Pi… was generally subject to the same duties as was SGC" is an impermissible legal conclusion. Spindler also opines or assumes that Pi owed extensive fiduciary duties to SIB without considering (a) Pi's scant and insubstantial contact with SIB and SVCH, (b) the limited nature of the advisory agreements between SGC, SVCH and SIB, and (c) the specific tasks and responsibilities with which Pi was charged during his tenure at SGC.

Moreover, Spindler blithely claims Pi owed and violated fiduciary other duties and duties of care without identifying a single law or regulation he relies upon for the existence of such duties. Instead, he heavily relies on a study issued in 2011 by the staff of the Securities and Exchange Commission (the "SEC").[6] Thus, even Spindler's methodology for analyzing legal

---

[5] Citing and analyzing *Specht v. Jensen*, 835 F.2d 805, 807 (10th Cir. 1988)(excluding expert testimony on legality of warrantless search).

[6] Notably, the SEC study Spindler relies upon, which is attached hereto as **Exhibit 3,** specifically states that "the Commission has expressed no view regarding the analysis, findings, or conclusions contained herein." *See* **Exhibit 3,** cover page. The study was merely a staff recommendation publications not legal authority.

duties is flawed. *See Moore*, 151 F.3d at 276 (expert's methodology for developing the basis of expert's opinions must be reliable.) Spindler's sole citation to an SEC staff study evidences his lack of experience and knowledge of the laws and regulations pertaining to investment advisors.[7] And this point goes far beyond just the credibility to be given to his report and his expected testimony; it shows he is simply not qualified as an expert on the law, regulations and business practices of investment advisors. *See Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175 (1999)(requiring admissible expert testimony to include "a reliable basis in the knowledge and experience of the relevant discipline").

Spindler also opines that Pi owed the same fiduciary duties to SIB and SVCH as his employer SGC allegedly owed to them. Spindler makes this legal conclusion without any legal support; instead, he simply makes a "Law According to Me" proclamation. Further, Spindler's opinion that Pi breached fiduciary duties is a legal opinion on a question of fact for the jury to decide. *Askanse*, 130 F.3d at 673; *Estate of Lowell v. U.S.*, 169, 171-72 (5th Cir. 1999)(affirming exclusion of expert[8] testimony regarding "what a reasonable fiduciary would do when confronted with facts identical to those in this case" as conveying a legal opinion). As discussed in the *Askanase* case, allowing a legal expert to instruct the jury on the law of the case supplants the role of the judge and risks jury confusion resulting from variations between the court's charge to the jury and the parties' experts' opinions on the law. Spindler's report and expected testimony does just that and should be stricken.

---

[7] To be sure, Spindler is a law professor who can teach law students the salient differences between partnerships and corporations, but that does not mean he has the knowledge or experience to address the discrete investment advisory issues raised in this case.

[8] One expert the court excluded in this case was a former Dean of the SMU Law School.

---

## IV. CONCLUSION

Under established Fifth Circuit precedent, Spindler should not be permitted to testify on matters of law to be decided and/or instructed to the jury by the court. Accordingly, the court should strike his report and bar him from testifying at the trial of this case.

WHEREFORE, PREMISES CONSIDERED, Defendant Osvaldo Pi requests that the court strike or limit the report and expert testimony of James Spindler, and grant to said Defendant such other and further relief to which he may show himself entitled.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By: /s/*Charlene C. Koonce*
J. Mitchell Little
ATTORNEY IN CHARGE
Texas Bar No. 24043788
2601 Network Blvd., Suite 102
Frisco, Texas 75034
(214) 472-2100 – Telephone
(214) 472-2150 – Telecopier
Mitch.Little@SolidCounsel.com

Charlene C. Koonce
Texas Bar No. 11672850
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
(214) 706-4200 – Telephone
(214) 706-4242 – Telecopier
Charlene.Koonce@SolidCounsel.com

**ATTORNEYS FOR DEFENDANT OSVALDO PI**

## CERTIFICATE OF CONFERENCE

   Counsel for Mr. Pi conferred with counsel for Plaintiff and the Receiver opposes this motion.

/s/ *Charlene C. Koonce*
Charlene C. Koonce

## CERTIFICATE OF SERVICE

  The undersigned certifies that on December 30th 2016, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. A copy of the filing was sent via ECF to the following attorneys of record:

| | | |
|---|---|---|
| Thomas L Taylor, III<br>Andrew McClanahan Goforth<br>The Taylor Law Offices PC<br>4550 Post Oak Place Drive, Suite 241<br>Houston, TX 77027 | representing | Daniel Bogar<br>*(Defendant)* |
| J Randle Henderson<br>Law Office of J Randle Henderson<br>16506 FM 529<br>Suite 115-107<br>Houston, TX 77095 | representing | Bernard Young<br>*(Defendant)* |
| Kevin M Sadler<br>Scott Daniel Powers<br>David T Arlington<br>Baker Botts LLP<br>98 San Jacinto Blvd, Suite 1500<br>Austin, TX 78701-4039 | representing | Ralph S. Janvey<br>*(Plaintiff)* |

/s/ *Charlene C. Koonce*
Charlene C. Koonce